**U.S. Department of Justice**

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2010 APR 15 P 2: 53

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

*United States Attorney*
*District of Maryland*
*Northern Division*

*Rod J. Rosenstein*
*United States Attorney*

*Philip S. Jackson*
*Assistant United States Attorney*

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

DIRECT: 410-209-4848
MAIN: 410-209-4800
FAX: 410-962-0717
TTY/TDD: 410-962-4462
Philip.Jackson@usdoj.gov

April 6, 2010

Gary Proctor, Esq.
8 E. Mulberry Street
Baltimore, MD 21202

Re: United States v. Nathan Blue, RDB 09-0263

Dear Mr. Proctor:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. The terms of the agreement are as follows:

Offense of Conviction

1. The Defendant agrees to plead guilty to Count One of the Indictment now pending against him, which charges him with conspiracy to distribute heroin, in violation of 21 U.S.C. Section 846. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

Elements of the Offense

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a. that during the course of the dates alleged, the Defendant knowingly, intentionally and unlawfully agreed with at least one of his co-defendants; and

    b. that the aim of this illegal agreement was to knowingly and intentionally distribute heroin.

Penalties

Revised 8/8/08



3. The sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: the maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is a term of twenty (20) years imprisonment, a three (3) year term of supervised release, and a $1,000,000 fine. In addition, the Defendant must pay $100.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

   a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

   d. The Defendant would have the right to testify in his own defense if he

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

      e.    If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

      f.    By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

      g.    If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

      h.    By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

### Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

      a.    The parties agree and stipulate that because the Defendant is a Career Offender as defined at USSG §4B1.1, the applicable Base Offense Level is 32, and the Criminal History Category is VI.

      b.    This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative

acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

      c.      The parties further agree and stipulate that the Defendant was a minimal participant in the charged conduct and that his Offense Level should be further reduced by four (4) levels pursuant to USSG §3B1.2.

      7.      This Office and the Defendant agree that with respect to the calculation of criminal history, the calculation of the advisory guidelines range and application of the 18 U.S.C. § 3553(a) factors, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines or in 18 U.S.C. § 3553(a) will be raised or are in dispute, unless no later than ten (10) days prior to the scheduled sentencing in this matter, a party gives written notice of the factual and legal grounds of any potential departure or adjustment, offense characteristic, and/or guideline factor.

### Obligations of the United States Attorney's Office

      8.      At the time of sentencing, this Office will recommend that the Defendant be sentenced to a term of incarceration within the guideline range established by the Court. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

      9.      The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

### Waiver of Appeal

      10.      The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed, including any fine, term of supervised release, or order of restitution and any issues that relate to the establishment of the advisory guidelines range, as follows: the Defendant waives any right to appeal from any sentence within or below the advisory guidelines range resulting from Criminal History Category VI and an adjusted base offense level of 25, and this Office waives any right to appeal from any sentence within or above the advisory guidelines range resulting from Criminal History Category VI and an adjusted base offense level of 25. Nothing in this agreement shall be construed to prevent either the

Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), and appealing from any decision thereunder, should a sentence be imposed that is illegal or that exceeds the statutory maximum allowed under the law or that is less than any applicable statutory mandatory minimum provision. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

11. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

12. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

Entire Agreement

13. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Philip S. Jackson
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

4-12-10                                      Nathan Blue
_____                         _____
Date                                              Nathan Blue

I am Mr. Blue's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

4-12-10                                      
_____                         _____
Date                                              Gary Proctor, Esq.

-6-

## ATTACHMENT A

### Statement of Facts

During the early morning hours of January 26, 2006, Baltimore County Police Officer Daniel Burns was patrolling Security Blvd. area of Baltimore county in his marked police vehicle, when he observed a 2003 gold Land Rover displaying Maryland tags 07547BY, traveling 60 mph in a posted 35 mph speed limit zone. According to Maryland Motor Vehicle Administration (MVA) records, that license showed a compulsory insurance violation. On those bases, Officer Burns effected a traffic stop of that vehicle.

Once stopped, the operator of the vehicle advised he did not have his license with him, but was identified Dana Coleman of 800 Bentalou Street in Baltimore, who at the time had his driving privileges suspended. The vehicle was found to be listed to Donte Dwayne Summers of 608 N. Grantley Street in Baltimore.

While at the scene, Officer Burns conducted a search of the vehicle Coleman had been operating. Inside the arm-rest between the driver's and passenger's seats, Officer Burns found a plastic "Foot Locker" bag, which contained 34 individual off white pellet-shaped items. Suspecting that those items might be controlled substances, Officer Burns then contacted Detective Michael Aiosa of the narcotics division, who responded to the police precinct station where Coleman had been taken after his arrest. Detective Aiosa recognized the seized items to be of a size and shape commonly used to package heroin, a Schedule I controlled substance. The seized items were then submitted to the Baltimore County Police crime laboratory. According to the certified forensic chemists at that laboratory those pellet shaped items were later examined and found to contain heroin having a weight in excess of 390 grams. The seized heroin that was in fact intended for further distribution.

Detective Aiosa and Officer Burns interviewed Coleman after apprising him of his rights per *Miranda v. Arizona*. Coleman advised he understood his rights and signed a waiver of rights form. Coleman then advised that he borrowed the vehicle from his "godbrother" Donte Summers (Summers) at approximately 2:00 a.m. Coleman further indicated that Summers was supposed to pick up the vehicle from his house sometime the following morning. .

From the Land Rover Coleman had been operating there were recovered a variety of toll receipts which indicated that Land Rover had been on the road traveling between Baltimore and the New York metropolitan areas during the time period Coleman claimed to have taken possession of the vehicle from Summers in Baltimore. Narcotics traffickers from the New York area are commonly sources for the contraband that is distributed in the Baltimore area, and that Coleman's apparent use of the Land Rover that night was therefore consistent with one who was transporting an amount of contraband controlled substances to Baltimore from the New York area.

Based on that seizure and other information, law enforcement officer sought and obtained judicial authority to monitor telephone communications taking place over phones associated with

Summers. Based on communications intercepted pursuant to that order, it was ascertained that during the time period of the charged conspiracy, Summers conspired with others to obtain more than one kilogram but less than three kilograms of heroin for further distribution in the Baltimore metropolitan area. In that regard, Nathan Blue assisted the conspiracy by testing the quality of the heroin brought by Summers into Baltimore for further distribution.

4/14/10
Date

Philip S. Jackson
Assistant United States Attorney

4-12-10
Date

Nathan Blue

4-12-10
Date

Gary Proctor, Esq.
Attorney for Nathan Blue